**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| E.M., a minor, by and through his parent and next friend, BRIANNA BLACKWOOD-MALLORY, Plaintiff, v. ATLANTA PUBLIC SCHOOL SYSTEM, Defendant. | Civil Action No.: 1:26-CV-1029 <br><br> IDEA Appeal — 20 U.S.C. § 1415(i)(2) <br> OSAH Docket No. 2608567 <br> ALJ: Hon. Dominic Capraro <br> Filed Pro Se |

## COMPLAINT FOR JUDICIAL REVIEW OF IDEA ADMINISTRATIVE DECISION PURSUANT TO 20 U.S.C. § 1415(i)(2); MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD PURSUANT TO 20 U.S.C. § 1415(i)(2)(C)(ii); AND FOR COMPENSATORY EDUCATION AND DECLARATORY RELIEF

### I. JURISDICTION, VENUE, AND EXHAUSTION

1. Jurisdiction. This Court has subject matter jurisdiction under 20 U.S.C. § 1415(i)(2)(A) and 28 U.S.C. § 1331. This is an appeal from a final administrative decision of the Office of State Administrative Hearings (OSAH) under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq., as implemented by O.C.G.A. §§ 20-2-2110 through 20-2-2118 and Ga. Comp. R. & Regs. 160-4-7-.12.

2. Venue. Venue is proper under 28 U.S.C. § 1391(b)(2). All events occurred in Fulton County, Georgia. Defendant's principal offices are at 130 Trinity Avenue SW, Atlanta, Georgia 30303.

3. Exhaustion and Timeliness. A due process hearing was conducted November 6, 2025 before ALJ Dominic Capraro, OSAH Docket No. 2608567-OSAH-DOE-SE-60-Capraro. Following Plaintiff's case-in-chief, the ALJ granted Respondent's motion for involuntary dismissal. The written Final Decision issued November 26, 2025. This Complaint is filed within the 90-day appeal period under 34 C.F.R. § 300.516(a). Pursuant to 34 C.F.R. § 300.516(d), copies are simultaneously filed with the Georgia Department of Education (1870 Twin Towers East, Atlanta, Georgia 30334) and the OSAH Clerk (225 Peachtree Street NE, Suite 400, Atlanta, Georgia 30303).

### II. PARTIES

4. Plaintiff E.M. is a minor child with a disability as defined by 20 U.S.C. § 1401(3) and 34 C.F.R. § 300.8, residing in Atlanta, Georgia. He appears through his parent and next friend, Brianna Blackwood-Mallory.

5. Plaintiff Brianna Blackwood-Mallory is E.M.'s parent within the meaning of 20 U.S.C. § 1401(23) and 34 C.F.R. § 300.30. She resides at 1719 Thoms Drive NW, Atlanta, Georgia 30318, and proceeds pro se under 28 U.S.C. § 1654. The IDEA enumerates parent rights at 20 U.S.C. §§ 1415(b)(1), (b)(3), and (b)(6), independently authorizing a parent as a party aggrieved to initiate

civil actions under 20 U.S.C. § 1415(i)(2)(A). Pro se pleadings are liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972).

6. Defendant Atlanta Public School System (APS) is a local educational agency (LEA) under 20 U.S.C. § 1401(19), obligated by 20 U.S.C. § 1412(a) to provide a Free Appropriate Public Education (FAPE) to eligible students with disabilities within its jurisdiction. APS may be served through its Superintendent, 130 Trinity Avenue SW, Atlanta, Georgia 30303.

## III. STANDARD OF REVIEW

7. 20 U.S.C. § 1415(i)(2)(C) provides that this Court shall receive the administrative record, hear additional evidence at the request of a party, and "grant such relief as the court determines is appropriate" based on the preponderance of the evidence. The Eleventh Circuit applies modified de novo review: due weight is given to ALJ factual findings supported by the record, but legal conclusions are reviewed de novo. Draper v. Atlanta Indep. Sch. Sys., 518 F.3d 1275, 1280 (11th Cir. 2008). The court independently determines whether the ALJ applied the correct legal standard. Jefferson Cnty. Bd. of Educ. v. Lolita S., 581 F. App'x 760, 764 (11th Cir. 2014).

8. Due weight attaches to findings made at the close of a fully developed adversarial hearing. The 24 numbered Findings of Fact in the written decision were made at the involuntary dismissal stage, after one side's evidence only, under the standard of whether evidence most favorable to Petitioner could support a finding in her favor. Such findings are not credibility determinations between competing witnesses and do not receive Rowley deference. Draper, 518 F.3d at 1285; Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 370 (1985). Where the written decision rests on an articulation error rather than a credibility determination, de novo review applies. Jefferson Cnty., 581 F. App'x at 764; Loren F. v. Atlanta Indep. Sch. Sys., 349 F.3d 1309, 1313–14 (11th Cir. 2003).

## IV. QUESTION PRESENTED

9. Whether the ALJ's written decision contains findings sufficient to permit judicial review under 20 U.S.C. § 1415(i)(2)(C). The written decision dismisses all five claims on the ground that Petitioners introduced "no evidence" or "insufficient evidence." Neither the oral ruling nor the written decision identifies which element of any applicable regulation was unmet, which admitted exhibit was evaluated against that element, or how any exhibit fell short. The question is not whether the evidence was sufficient. The question is whether the decision articulates the regulatory basis for dismissal with sufficient specificity to permit this Court to determine whether the correct legal standard was applied. It does not.

## V. SECTION I — LEGAL ERRORS REVIEWABLE DE NOVO

### A. The Written Decision Does Not Articulate Element-Level Regulatory Findings

10. OSAH Rule 616-1-2-.19(2) authorizes dismissal for failure of proof. That authority is conditioned on a determination that the evidence presented is legally insufficient to support a finding in the petitioner's favor. Legal insufficiency must be measured against specific regulatory criteria: a finding of legal insufficiency that does not identify the regulatory element unmet is not a legally sufficient finding of insufficiency. The analogous standard under Fed. R. Civ. P. 52(c)

requires the court to identify the basis for dismissal. Ala. Aircraft Indus. v. Boeing Co., 14 F.4th 1291, 1303 (11th Cir. 2021).

11. 20 U.S.C. § 1415(i)(2)(C) requires this Court to review the administrative record and determine whether relief is appropriate. That function requires a written decision that identifies the regulatory elements examined and explains how the record was assessed against those elements. The complete oral ruling was: "After deliberation and review of the exhibits that have been presented, I find that the Petitioners have not met their burden with respect to claims 1 through 5. As such, the motion for involuntary dismissal is granted. This case is dismissed." Tr. 143:5–10. That ruling identifies no regulatory element, cites no admitted exhibit by name, and does not explain how any provision of 34 C.F.R. §§ 300.320, 300.8(c), or 300.116 was assessed. The written Final Decision repeats, for each of the five claims, that "Petitioners introduced no evidence" or "insufficient evidence," without identifying which element was examined. Final Decision at 9, 10, 11.

12. The written decision creates an internal inconsistency that confirms the articulation failure. The ALJ cites Petitioner's Exhibit P-1 at FOF ¶5 (E.M.'s neuropsychological evaluation and FBA) and at FOF ¶19 ("[t]he IEP incorporates the findings of the neuropsychological evaluation and functional behavioral assessment conducted in May 2025"). Final Decision at 2, 6. The Conclusions of Law then state, five separate times, that "Petitioners introduced no evidence" or "insufficient evidence." Final Decision at 9, 10, 11. A written decision that cites a petitioner's exhibit as a factual predicate cannot conclude that no evidence was presented without explaining that conclusion. The absence of that explanation prevents this Court from determining whether the correct legal standard was applied.

13. No provision of the IDEA, 20 U.S.C. §§ 1400 et seq., its implementing regulations, or OSAH Rule 616-1-2-.22 requires expert testimony to establish an IDEA violation. Whether an IEP satisfies 34 C.F.R. § 300.320, whether an eligibility classification satisfies 34 C.F.R. § 300.8(c)(4), and whether a placement satisfies 34 C.F.R. § 300.116 are documentary and legal determinations. The Eleventh Circuit has addressed IEP adequacy through regulatory analysis of document content without requiring expert testimony. Loren F., 349 F.3d at 1313–14. Treating the absence of expert testimony as dispositive of legal sufficiency, without identifying the regulatory element that required expert proof, applies a threshold not found in the statute or regulations. That is a legal error reviewed de novo. Draper, 518 F.3d at 1280.

### B. Schaffer Does Not Substitute for Articulated Regulatory Findings

14. At Conclusions of Law ¶2, the written decision states that under Schaffer v. Weast, 546 U.S. 49, 62 (2005), "the party attacking [the IEP's] terms bears the burden of showing why the educational setting established by the IEP is not appropriate." Final Decision at 7. Schaffer allocates the ultimate burden of persuasion at the close of a fully developed merits hearing. It does not govern the involuntary dismissal standard, and it does not substitute for the obligation to identify which element the burdened party failed to prove. A finding that a party "failed to meet its burden" is legally sufficient only if it identifies the burden-bearing element that was not satisfied. The written decision does not identify that element under any of the five claims. Applying Schaffer's burden allocation at the dismissal stage, as a substitute for element-level regulatory analysis, is a legal error reviewed de novo. At the hearing, Plaintiff raised this directly: "I'm not usually required to prove what the district should've done instead with expert

testimony. I'm only required to show that procedural violations occurred that . . . impeded my participation and it denied educational benefit." Tr. 140:15–20.

### C. Absence of Articulated Findings Precludes Harmless-Error Review

15. APS may contend that any articulation error is harmless. Harmless-error analysis requires identifying the basis of the decision actually made, then determining whether a different analysis would have altered the outcome. Where the written decision does not identify which regulatory element was unmet under any claim, this Court cannot determine what a correct analysis would have concluded without conducting the analysis itself—which is the de novo review Plaintiff requests. There is no baseline against which to measure harmlessness. An articulation error at the involuntary dismissal stage is not amenable to harmless-error review because the proceeding was terminated before full evidentiary development. Draper, 518 F.3d at 1285; R.L. v. Miami-Dade Cnty. Sch. Bd., 757 F.3d 1173, 1178–79 (11th Cir. 2014).

### D. Erroneous Exclusion of IEE Substantive Content

16. 34 C.F.R. § 300.502(c) provides that when a parent obtains an independent educational evaluation, "the results of the evaluation . . . must be considered by the public agency . . . in any decision made with respect to the provision of FAPE." The ALJ admitted Plaintiff's Exhibit P-1—the IEE and FBA—solely to show what APS considered, excluding the documents' substantive findings from evidentiary consideration. Tr. 23–25. Compliance with § 300.502(c) requires examining what the evaluation found and comparing those findings against the IEP. That comparison is impossible if the evaluation's findings are excluded. The ALJ confirmed this consequence: "So hypothetically, if the IEE said . . . he needs to be in small group setting, that—I—I—the court could not consider that because it was not admitted from the truth of the matter asserted." Tr. 127:10–16. The ruling precluded the only analysis capable of establishing whether § 300.502(c) was satisfied.

17. The exclusion is independently inconsistent with the written decision. FOF ¶19 states: "The IEP incorporates the findings of the neuropsychological evaluation and functional behavioral assessment conducted in May 2025." Final Decision at 6 (citing Exs. P-4, R-1). Whether the IEP incorporates the IEE's findings can only be verified by comparing the IEP against the IEE for the truth of its contents. The ALJ made a factual finding that required P-1's substantive content and simultaneously excluded that content. That internal inconsistency is visible on the face of the decision and is a legal error reviewed de novo. Additionally, O.C.G.A. § 50-13-13(a)(4) authorizes administrative bodies to receive evidence bearing "sufficient guarantees of trustworthiness," a standard psychoeducational evaluations prepared by licensed professionals satisfy. J.S.K. v. Hendry Cnty. Sch. Bd., 941 F.2d 1563, 1573 (11th Cir. 1991). Wholesale exclusion of an IEE's substantive content was not compelled by that provision.

## VI. SECTION II — INDEPENDENT REVIEW OF THE RECORD UNDER § 1415(i)(2)(C)

Because the written decision does not articulate element-level findings on any claim, this Court conducts de novo review. The following applies the statutory and regulatory text to the admitted record for each of the four issues identified above.

### Issue 1. EBD Eligibility: 34 C.F.R. § 300.8(c)(4)

18. 20 U.S.C. § 1401(3)(A)(i) defines "child with a disability" to include a child with an "emotional disturbance" as defined in regulations. 34 C.F.R. § 300.8(c)(4)(i) defines "emotional disturbance" as a condition exhibiting, over a long period of time and to a marked degree that adversely affects educational performance, one or more of: (i) an inability to learn not explained by intellectual, sensory, or health factors; (ii) an inability to build or maintain satisfactory interpersonal relationships; (iii) inappropriate types of behavior or feelings under normal circumstances; (iv) a general pervasive mood of unhappiness or depression; or (v) a tendency to develop physical symptoms or fears associated with personal or school problems. Ga. Comp. R. & Regs. 160-4-7-.02(7) tracks this definition. An eligibility classification that does not correspond to documented findings under the enumerated criteria does not satisfy the regulation. Eligibility classification is a mixed question of law and fact reviewed de novo. Draper, 518 F.3d at 1280.

19. The written decision does not contain findings under any of the five enumerated criteria. The written decision accepts the EBD classification transferred from Fulton County School District (FCSD) without identifying which criterion the FCSD records satisfy or how the criteria were applied to E.M. Three pending records amendment requests—filed June 27, August 12, and September 7, 2025—and Plaintiff's Supplemental Notice of Objection to APS's Use of Fabricated and Disputed Records (October 1, 2025, docketed as part of the administrative record) documented specific defects in those records: entries characterizing conduct as "assault" in a manifestation determination subsequently overturned; teacher referrals dated before documented classroom observations; and exclusion of peer statements. A receiving LEA relying on formally disputed records to satisfy 34 C.F.R. § 300.306's requirement of accurate and reliable data has not demonstrated regulatory compliance.

20. The undisputed FCSD records do not support the classification. Two FCSD Manifestation Determination Reviews found E.M.'s behavioral incidents were directly caused by and substantially related to his ADHD. Tr. 26–27. Behavior found to be a direct manifestation of a health impairment does not satisfy criterion (iii)—"inappropriate types of behavior or feelings under normal circumstances"—because behavior occurring as a direct disability response does not occur "under normal circumstances" within the plain meaning of that criterion. APS conducted no independent evaluation under 34 C.F.R. §§ 300.303–306. Dr. Walter's IEE (P-1) identified ADHD combined type, executive-function deficits, and dysgraphia. It did not identify any enumerated emotional disturbance criterion. ADHD without a co-occurring emotional disturbance supports eligibility under Other Health Impairment, 34 C.F.R. § 300.8(c)(9), not EBD. Plaintiff testified without contradiction that no prior evaluator documented EBD criteria; the ALJ accepted that testimony. Tr. 22:19–21. The EBD classification error is material to the LRE issue because APS's LRE justification derives from the classification: the IEP attributes the placement decision to "significant needs in emotional and behavioral regulation," language that reflects the EBD classification rather than independently documented observation.

### Issue 2. IEP Content: 34 C.F.R. § 300.320

21. 34 C.F.R. § 300.320(a)(1) requires an IEP to contain a statement of the child's present levels of academic achievement and functional performance. 34 C.F.R. § 300.320(a)(2)(i) requires measurable annual goals designed to meet each disability-related need. 34 C.F.R. § 300.324(a)(1)(iii) requires the IEP team to review and consider existing evaluation data including IEEs. 34 C.F.R. § 300.324(a)(2)(v) requires consideration of assistive technology. An

IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F. v. Douglas Cnty. Sch. Dist., 580 U.S. 386, 399 (2017).

22. The face of Ex. R-1 (the IEP) shows that the present levels section does not incorporate the IEE's findings regarding executive-function deficits, dysgraphia characteristics, or ADHD impact on academic output. Those findings appear only in meeting minutes, a document separate from the operative IEP. Plaintiff testified without contradiction: "R-7, which is the August A.P.S. IEP, does not enter those findings in the present levels, goals, or services. Instead the findings only appear in the meeting minutes—which is not the operative IEP document." Tr. 136:4–10. IEP content requirements run to the IEP itself. T.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572, 577 (3d Cir. 2000). The IEP goals are not calibrated to IEE-assessed present levels. The IEP does not address assistive technology as § 300.324(a)(2)(v) requires. Draper, 518 F.3d at 1282–83. APS's own OT Referral Form dated August 7, 2025—twelve days before the IEP meeting—documents staff identification of suspected fine-motor and dysgraphia concerns the IEP does not address.

23. The written decision recites the correct standard at COL ¶5: "[T]o meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Final Decision at 8. At COL ¶6 it applies a different standard: "the Petitioners introduced no evidence to suggest that E.M. was denied a free and appropriate public education." Final Decision at 9. "Denied FAPE" is the ultimate conclusion. "Not reasonably calculated to enable progress" is the operative Endrew F. test. The written decision recites the correct standard and applies a different, lower one. That is a legal error reviewed de novo. Draper, 518 F.3d at 1280.

### Issue 3. LRE: 20 U.S.C. § 1412(a)(5)(A) and 34 C.F.R. § 300.116

24. 20 U.S.C. § 1412(a)(5)(A) provides: "[T]o the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled," and removal "occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 34 C.F.R. § 300.116(a)(2) requires the IEP team to consider supplementary aids and services before determining that a more restrictive setting is required. The Eleventh Circuit implements this through a two-prong framework: (1) whether education in the regular classroom with supplementary aids and services can be achieved satisfactorily; and (2) whether the district has mainstreamed the child to the maximum extent appropriate. Greer v. Rome City Sch. Dist., 950 F.2d 688, 696 (11th Cir. 1991).

25. At COL ¶3, the written decision cites Greer. At COL ¶¶12–13, the LRE analysis does not apply either prong. It states that Petitioners introduced "no evidence regarding the ETS program" and "no evidence that E.M. could achieve satisfactory academic progress at Wesley with supplementary aids." Final Decision at 11. That is not a Greer analysis; it restates the evidentiary conclusion without applying the regulatory framework. A written decision that cites a legal standard and fails to apply it cannot be affirmed on that ground. The IEP does not document what supplementary aids and services were considered and found insufficient at Wesley, as 34 C.F.R. § 300.116(a)(2) requires. APS did not evaluate E.M.'s functioning in a general-education setting at Wesley before the placement decision. Tr. 14. The FBA admitted as part of P-1 found that E.M. "thrives when he has supports; calm, clear, concise directions." Tr. 23. A placement

decision without a documented determination that supplementary aids at the proposed setting were inadequate does not satisfy § 300.116(a)(2). Greer, 950 F.2d at 696.

26. The written decision's own findings are internally inconsistent on the LRE issue. FOF ¶13 states APS found ETS appropriate because the FBA "noted that E.M. showed improvement due to the behavioral supports E.M. received in Fulton County." Final Decision at 4–5. Under Greer's first prong, documented improvement in response to behavioral supports is evidence that supplementary supports are effective—a finding that weighs toward less restrictive placement with those supports, not toward a therapeutic setting. The written decision uses the same evidence to reach a conclusion that the Greer framework treats as pointing in the opposite direction. FOF ¶20 reproduces the IEP's LRE justification verbatim without identifying what supplementary aids were specifically considered for E.M. at Wesley and found insufficient—the analysis 34 C.F.R. § 300.116(a)(2) requires before a more restrictive placement may be implemented. The absence of that analysis is identifiable from the face of the written decision.

### Issue 4. Whether Dismissal at Close of Petitioner's Case Permitted Meaningful Review Under § 1415(i)(2)(C)

27. 20 U.S.C. § 1415(f)(1)(A) guarantees that whenever a complaint is received under § 1415(b)(6), "the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing." 34 C.F.R. § 300.512(a)(1) provides that each party has the right to "present evidence and written arguments." Dismissal at the close of Petitioner's case-in-chief, without articulated regulatory findings, and immediately following denial of any written response opportunity to the dismissal motion, does not satisfy the reviewability requirement of 20 U.S.C. § 1415(i)(2)(C). After Respondent's dismissal argument—presented for the first time at the close of Plaintiff's case-in-chief, spanning Tr. 121–135—Plaintiff requested leave to file a written brief within five days, limited to pinpoint citations to admitted exhibits P-7, R-7, P-4, R-8, and R-26. Tr. 142:19–143:1. That request was denied and the ruling issued immediately. Tr. 143:2–10. Plaintiff preserved this objection in a Notice of Objection and Preservation of Error, filed November 6, 2025 and docketed as part of the administrative record, citing OSAH Rule 616-1-2-.22 and 34 C.F.R. § 300.513(a)(2).

28. Two additional claims were before the ALJ and are not addressed in the written decision, which provides no basis for deference on either. First, 34 C.F.R. § 300.503(a) requires written notice "a reasonable time before" the agency proposes to change a child's educational placement. The IEP took effect August 20, 2025. APS's Prior Written Notice was transmitted August 29, 2025—nine days after the placement took effect. A notice transmitted after the action has already been taken does not satisfy the regulation's temporal requirement as a matter of plain text. The PWN also does not document consideration of a general-education placement with supplementary aids, contrary to 34 C.F.R. § 300.503(b)(4). The written decision contains no analysis of either deficiency. Second, 20 U.S.C. § 1415(j) provides that during any due process proceeding, the child shall remain in "the then-current educational placement" unless "the parties otherwise agree." The then-current placement is the last placement to which the parents consented. Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3d Cir. 1996) (persuasive). E.M.'s last agreed placement was his general-education enrollment at Wesley. APS sent written correspondence on August 29, 2025 stating it was implementing ETS "consistent with stay-put" before Plaintiff had agreed to that placement. Ex. G. Plaintiff's written response (P-4) invoked § 1415(j) and demanded confirmation that E.M.'s stay-put placement remained his

general-education enrollment. Tr. 139:10–12. APS's counsel acknowledged that Petitioner "disagree[d] that that category may be inappropriate." Tr. 66:9–11. Section 1415(j) permits deviation only when "the parties otherwise agree." The record contains no documented agreement. Honig v. Doe, 484 U.S. 305, 323 (1988). The written decision does not address the claim. R.L., 757 F.3d at 1177.

## VII. MOOTNESS

29. This action is not moot. Three independent grounds apply. First, the compensatory education claim is retrospective equitable relief for past educational deprivation. It is not extinguished by subsequent enrollment changes. Jefferson Cnty. Bd. of Educ. v. Lolita S., 581 F. App'x 760, 764–65 (11th Cir. 2014); Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 524 (D.C. Cir. 2005). Second, the EBD classification remains in E.M.'s educational records and will govern any future public school enrollment. A live controversy exists as to records correction and declaratory relief. Honig v. Doe, 484 U.S. 305, 318 (1988). Third, the capable-of-repetition-yet-evading-review doctrine applies: E.M. resides within APS's jurisdiction, O.C.G.A. § 20-2-690.1 creates a compulsory education obligation through age 18, and annual IEP cycles are typically too short to permit full appellate review before the relevant period expires. Murphy v. Hunt, 455 U.S. 478, 482 (1982). Plaintiff does not seek tuition reimbursement. She seeks retrospective compensatory relief and records correction. Reid, 401 F.3d at 524; IDEA Policies, 71 Fed. Reg. 46,704 (Aug. 14, 2006).

## VIII. MOTION TO SUPPLEMENT PURSUANT TO 20 U.S.C. § 1415(i)(2)(C)(ii)

30. 20 U.S.C. § 1415(i)(2)(C)(ii) provides that this Court "shall hear additional evidence at the request of a party." Supplementation is sought for a limited purpose: to provide the expert testimony the ALJ identified as absent and treated as dispositive. Town of Burlington v. Dep't of Educ., 736 F.2d 773, 790 (1st Cir. 1984) (supplementation appropriate where failure to present evidence is attributable to limitations of the administrative proceeding rather than deliberate choice). No new claims are introduced. No factual determinations made by the ALJ on the merits are relitigated; the ALJ made no merits findings.

31. The record was not fully developed for three documented reasons. First, Plaintiff filed a formal Request for Issuance of Subpoenas on September 30, 2025, identifying Dr. L. Warren Walter and Dr. A.J. Nkosi by name, license number, and stated purpose; OSAH granted the request; service was not completed before the November 6, 2025 hearing. Second, by October 30, 2025, the ALJ's hearsay ruling was operative; presenting expert testimony on P-1's recommendations would have encountered the same evidentiary bar applied to the written report. Third, the hearsay ruling itself rendered expert testimony on P-1's substantive findings unavailable: a live expert testifying about findings in his own excluded report faces the same bar as the report. These barriers do not reflect a deliberate election to forgo expert proof. Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1473 (9th Cir. 1993).

### A. Testimony of Dr. L. Warren Walter

Dr. Walter conducted E.M.'s IEE in May–June 2025. P-1 was admitted below for a non-hearsay purpose only. His testimony is sought on: (a) E.M.'s present levels of academic achievement and functional performance; (b) the IEP recommendations in Appendix B and whether the IEP satisfies 34 C.F.R. § 300.320; and (c) whether the IEP was reasonably calculated to enable

appropriate progress under Endrew F. Dr. Walter has indicated he does not intend to appear voluntarily. Plaintiff requests that this Court compel his testimony by subpoena under Fed. R. Civ. P. 45. Dr. Walter authored P-1—admitted into evidence, cited in Findings of Fact, and excluded from substantive consideration. He possesses non-privileged professional knowledge about his own evaluation findings directly at issue in this proceeding.

### B. Testimony of Dr. A.J. Nkosi

Dr. Nkosi conducted the FBA admitted as part of P-1. His testimony is sought on: (a) whether E.M.'s behavioral profile satisfies the enumerated criteria of 34 C.F.R. § 300.8(c)(4); and (b) whether a general-education setting with supplementary supports was clinically indicated under the LRE framework. Dr. Nkosi has not responded to a request for voluntary appearance. Plaintiff requests that this Court compel his testimony by subpoena under Fed. R. Civ. P. 45.

### C. APS Internal OT Referral Form, August 7, 2025

This APS-generated document, dated twelve days before the IEP meeting, documents APS staff identification of suspected fine-motor and dysgraphia concerns the IEP does not address. It is relevant to whether the IEP satisfies 34 C.F.R. §§ 300.324(a)(1)(iii) and 300.324(a)(2)(v). It was not admitted below.

### IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Direct OSAH to transmit the certified administrative record under 20 U.S.C. § 1415(i)(2)(C)(i);

2. Review all ALJ legal conclusions de novo and, given the absence of articulated element-level regulatory findings on any claim, conduct de novo review of the full record under 20 U.S.C. § 1415(i)(2)(C);

3. Grant Plaintiff's motion to supplement the administrative record by receiving the testimony of Dr. L. Warren Walter and Dr. A.J. Nkosi, each compelled by subpoena under Fed. R. Civ. P. 45, and APS's OT Referral Form dated August 7, 2025, pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii);

4. PRIMARY RELIEF: Vacate the Final Decision and remand for a new due process hearing before a different ALJ, at which P-1 is admitted for its full evidentiary weight and the ALJ articulates element-level regulatory findings under 34 C.F.R. §§ 300.320, 300.8(c), and 300.116;

5. ALTERNATIVE RELIEF: In the alternative, if this Court conducts a de novo determination on the existing supplemented record, find that APS denied E.M. a FAPE, and: (a) order APS to conduct a compliant reevaluation under 34 C.F.R. §§ 300.303–306 within 30 days and convene an IEP meeting within 30 days of completing that evaluation; (b) order compensatory education calibrated to the educational benefit of which E.M. was deprived from August 4, 2025, under the make-whole framework of Jefferson Cnty., 581 F. App'x at 765, and Reid, 401 F.3d at 524; and (c) order correction of E.M.'s educational

records to reflect that the EBD eligibility classification is not supported by findings under 34 C.F.R. § 300.8(c)(4)(i) on the existing administrative record, pursuant to this Court's remedial authority under 20 U.S.C. § 1415(i)(2)(C)(iii);

6. Award attorneys' fees and costs as the prevailing party under 20 U.S.C. § 1415(i)(3), upon retention of counsel; and

7. Grant such other relief as the Court determines is appropriate under 20 U.S.C. § 1415(i)(2)(C).

Respectfully submitted this 23rd day of February, 2026.

/s/ **Brianna Blackwood-Mallory**
**BRIANNA BLACKWOOD-MALLORY**
Parent and Next Friend of E.M.
Pro Se Plaintiff
1719 Thoms Drive NW
Atlanta, Georgia 30318
Telephone: (404) 667-0232
Email: blackwoodmbm@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2026, I filed the foregoing Complaint with the United States District Court for the Northern District of Georgia, Atlanta Division, by personal delivery to the Clerk of Court, Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive SW, Atlanta, Georgia 30303.

I further certify that on February 23, 2026, I served a true and correct copy upon each of the following by electronic mail:

- Atlanta Public School System, Office of the Superintendent, 130 Trinity Avenue SW, Atlanta, Georgia 30303

- Laurance J. Warco, Esq. and Caroline Scalf, Esq., Parker Poe Adams & Bernstein LLP, 1075 Peachtree Street NE, Suite 1500, Atlanta, Georgia 30309 (counsel of record for APS in OSAH Docket No. 2608567)

- Georgia Department of Education, Special Education Services and Supports, 1870 Twin Towers East, 205 Jesse Hill Jr. Drive SE, Atlanta, Georgia 30334

- Office of State Administrative Hearings, Clerk of Court, 225 Peachtree Street NE, Suite 400, South Tower, Atlanta, Georgia 30303

Pursuant to 34 C.F.R. § 300.516(d), copies have been simultaneously provided to the Georgia Department of Education and the OSAH Clerk as set forth above.

/s/ **Brianna Blackwood-Mallory**
**BRIANNA BLACKWOOD-MALLORY**